# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | CR. No. C-10-752-1 |
| v. | § | (C.A. No. C-14-14) |
| | § | |
| JOSE ANTONIO ORTIZ, JR., | § | |
| | § | |
| Defendant/Movant. | § | |

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE, AND DENYING CERTIFICATE OF APPEALABILITY

Jose Antonio Ortiz filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, along with a memorandum in support. D.E. 272, 273. The United States filed its combined response and motion to dismiss. D.E. 295. Ortiz filed a late response. D.E. 325. Also before the Court are the affidavits of Ortiz' trial counsel. D.E. 289, 308. The Court denies Ortiz' § 2255 claims and he is denied a certificate of appealability.

## I. BACKGROUND

The Fifth Circuit Court of Appeals described the events leading up to Ortiz' arrest on state charges as follows:

> Police arrested Ortiz after receiving a tip from a confidential informant that Ortiz was offloading narcotics at a residence [on March 10, 2010]. Officers surveilled the house and observed suspicious activity corroborating the tip. They discovered a false compartment in a parked van, which they searched with the consent of its driver. Law enforcement subsequently searched the house, without permission or a warrant, and found a "user amount" of cocaine in plain view. After obtaining a warrant, they discovered the methamphetamine that served as the basis of the conviction.

*United States v. Ortiz*, No. 12-40101, 507 Fed. App'x. 339, 340-41 (5th Cir. Jan. 9, 2013) (per curiam) (designated unpublished).

Ortiz was arrested by federal authorities in July 2010 and made his initial appearance in federal court that week. Ortiz and a co-defendant, Juan Chavez, were indicted August 11, 2010, on two counts of drug trafficking. D.E. 6. Trial was scheduled for September 27, 2010. D.E. 11.

A Superseding Indictment was issued adding two additional defendants and third drug trafficking count. D.E. 17. Ortiz filed a motion for continuance. D.E. 34. Trial was continued for a month.

Ortiz filed a motion to suppress in early October 2010. D.E. 38. A Second Superseding Indictment was issued on December 8, 2010, that added two additional co-defendants. D.E. 68. The motion to suppress was heard in May 2011. At the conclusion of the hearing, the Court denied the motion to suppress.[1]

---

[1]      Here's my ruling based on the evidence presented. I am going to first find that Mr. Ortiz does not have standing to bring the motion. Alternatively, should it be determined upon review of this case that he, in fact, did have standing, I also will deny the motion to suppress because I believe that the officers had the right to enter the premises for the purpose of conducting a protective sweep and, also, under exigent circumstances, that exigent circumstances existed based upon Officer Cohea's view through the window of one of the individuals standing at the sink with the water running and, to him, it appeared that he was destroying evidence, and, for that reason, they also had the right to go into the house to avoid the destruction of evidence.
Thereafter and, of course, while in the house,

The government disclosed the existence of a dash-cam videotape to the Court and to Ortiz on June 20, 2011, that depicted some of the events the day of the search on March 10, 2010. As a result of that disclosure, Ortiz sought a further continuance to analyze the videotape.

Ortiz requested a speedy trial by letter to the Court dated September 22, 2011. D.E. 177. Numerous continuances were sought between September 2010 and the ultimate trial date in November 2011. The majority were sought by Ortiz. By agreement of the judges, trial was reset to November 1, 2011, before a different judge. D.E. 169. The jury found Ortiz guilty on all three counts of the Second Superseding Indictment. D.E. 201.

The Probation Department prepared the Presentence Investigation Report (PSR). D.E. 215. Ortiz' base offense level was based upon 191.62 grams and 851.4 grams of methamphetamine which were converted to the marijuana equivalent of 17,028 kilograms, resulting in a base offense level of 36. Ortiz had a prior drug trafficking offense from 2000, which with other offenses resulted in eleven criminal history points and a criminal history category of V. Before trial, the government filed a § 851 notice of other offenses. Ortiz' guideline sentencing range was 292 to 365 months, with a minimum sentence of 20 years for Counts One and Two and a statutory minimum of ten years for Count Three. D.E. 215, ¶¶

---

they observed in open sight some drugs and, therefore, went
and got -- or thereafter went and got a search warrant and
discovered more contraband.
I am going to deny the motion to suppress.

D.E. 150, pp. 99-100.

3

63-65. Ortiz objected to the PSR. D.E. 207, 210.

Sentencing was held in January 2012. The government objected to the PSR on the grounds that it did not include an enhancement for leadership role or for obstruction of justice. D.E. 262, p. 9. Ortiz objected to the finding of guilt on Count Three for drugs found on another member of the conspiracy. *Id*. The Court overruled the objections and sentenced Ortiz to 292 months imprisonment on Counts One, Two and Three to be served concurrently, to be followed by 10 years supervised release on Counts One and Two and eight years on Count Three, all to be served concurrently, a $5000 fine to be paid concurrently, and a $100 special assessment on each Count. *Id*., pp. 10, 26, 36-52, 65, D.E. 225. The Court advised Ortiz of his right to appeal. *Id*.

On appeal, Ortiz challenged the denial of his motion to suppress and also challenged this Court's response to a jury note. The Fifth Circuit Court of Appeals held that Ortiz did not have standing to complain about the search of the residence.[2] *United States v. Ortiz*, 507

---

[2]

> But even accepting that Ortiz paid Gomez to use the residence—a point on which the record is not entirely certain—Gomez lacked the power to convey a valid leasehold interest to Ortiz. Under elementary principles of Texas real property and agency law, a person cannot convey an interest in property he does not own absent actual or apparent authorization from the owner. . . .Though his jet ski was stored in the garage as a sort of a personal favor from his cousin Gomez, Ortiz—like the defendant in *Carter*—traveled to the residence for the sole purpose of engaging in drug trafficking. *See id.* at 86, 119 S.Ct. 469. He was, at most, "merely legitimately on the premises," *see Vega*, 221 F.3d at 798, so cannot claim a reasonable expectation of privacy in his second cousin's ex-girlfriend's sister's home.

*Id*. at pp. 342-33.

4

Fed. App'x. 339 (5th Cir. Jan. 9, 2013) (per curiam) (designated unpublished). On plain error review, the court also rejected Ortiz' claim the response to the jury note was improper. *Id.* at 345. Ortiz timely filed his present motion.

## II.  MOVANT'S ALLEGATIONS

Ortiz raises eight issues including multiple claims of ineffective assistance of counsel. First, Ortiz raises a *Brady* claim and two claims of prosecutorial misconduct. These complaints relate to the government's late disclosure of the dash-cam videotape from March 10, 2010, and the government's earlier denial of the videotape's existence. Ortiz next claims the government used perjured testimony to establish probable cause for the search that led to his arrest.

Ortiz identifies multiple grounds of ineffective assistance of counsel. Ortiz claims counsel failed to:

1) obtain dismissal of the criminal complaint,

2) obtain television film footage to establish the search was illegal,

3) adequately prepare for trial,

4) object to the district court's "loudly scolding of jury," and

5) protect Ortiz' speedy trial rights.

# III.   ANALYSIS

## A.      28 U.S.C. § 2255

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: 1) constitutional issues, 2) challenges to the district court's jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam).

## B.      *Brady* and Prosecutorial Misconduct Claims

Ortiz raises a *Brady* and prosecutorial misconduct claim related to the government's delay in producing the DPS dash-cam videotape of portions of the events leading up to the search that discovered drugs. He raises a second prosecutorial misconduct claim related to the search warrant.

Ortiz claims that the government, in violation of *Brady v. Maryland*, withheld the dash-cam videotape from a DPS unit outside the premises that were searched. 373 U.S. 83, 87 (1963).[3] As part of his prosecutorial misconduct claim, Ortiz contends that the AUSA

---

[3] "To prevail upon his Brady claim, [a defendant] must establish that: (1) the prosecution did not disclose evidence; (2) the evidence was favorable to the defense; and (3) the evidence was

denied the existence of the videotape. Ultimately, none of these claims succeed because the Fifth Circuit held that Ortiz had no standing to contest the search. As a result, nothing related to the search is material to his conviction.

## C.     Standard for Claims of Ineffective Assistance of Counsel

Generally, an ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. *Id.* This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under *Strickland*, the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment. *Glover v. United States*, 531 U.S. 198, 203 (2001); *United States v. Herrera*, 412 F.3d 577, 581 (2005).

If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both

---

material—*i.e.*, there is a reasonable probability that if the government had disclosed the evidence, the result of the proceeding would have been different." *United States v. Infante*, 404 F.3d 376, 386 (5th Cir. 2005) (citing *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994)).

components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

**D.      Allegations of Ineffective Assistance of Counsel**

    1.  *Failure to obtain dismissal of criminal complaint*

Ortiz complains that the original criminal complaint alleged that his criminal acts took place in Brooks County rather in Nueces County where the methamphetamine was found. The complaint includes an attached detailed narrative regarding the events in Corpus Christi, Texas, leading up to the discovery of the methamphetamine that Ortiz was charged with in the complaint. Based upon the complaint, a warrant was issued for Ortiz' arrest. The evidence supports the allegation of Brooks County as a location where some of the events in the conspiracy took place. Chavez transported drugs from the Rio Grande Valley to Corpus Christi, Texas. D.E. 259, pp. 46-47.

"Criminal Rules 3 and 4 provide that an arrest warrant shall be issued only upon a written and sworn complaint (1) setting forth 'the essential facts constituting the offense charged,' and (2) showing 'that there is probable cause to believe that (such) an offense has been committed and that the defendant has committed it * * *.'" *Giordenello v. United States*, 357 U.S. 480, 485 (1958). The complaint provided adequate information to the magistrate judge who signed the complaint and authorized the issuance of Ortiz' arrest warrant. Moreover, the Indictment following Ortiz' arrest remedied any purported defect in the

8

complaint.[4] *Denton v. United States*, 465 F.2d 1394, 1395 (5th Cir. 1972) (per curiam). Ortiz has not shown prejudice from counsel's failure to challenge the complaint and has therefore, not established ineffective assistance of counsel on this issue.

2. *Obtain television footage to establish that the police conducted an illegal search*

Ortiz claims that television footage of the search of the residence would have confirmed that the police conducted an illegal search before finding the methamphetamine and that counsel should have reviewed the footage. Because Ortiz did not have standing to object to the search, he cannot prove prejudice from counsel's alleged failure. Furthermore, counsel's affidavit states that he reviewed the footage and found nothing useful–the footage did not depict what happened inside the house. D.E. 289, ¶ 2. Ortiz has failed to establish the necessary elements of ineffective assistance of counsel as to this ground.

3. *Counsel allegedly failed to prepare for trial*

Ortiz globally alleged that counsel failed to prepare for trial and failed to present defense witnesses. "[A] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Druery v. Thaler*, 647 F.3d 535, 541 (5th Cir. 2011) (quoting *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993)); *accord Trottie v. Stephens*, 720 F.3d 231, 243 (5th Cir. 2013). Ortiz has alleged no specific facts regarding

---

[4]  The Indictment stated "From on or about March 10, 2010 to on or about July 23, 2010, in the Corpus Christi Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court . . . ." D.E. 6.

9

what counsel did not do or what he should have done, what witnesses counsel should have presented, and whether those witnesses would have been available to testify at trial. Accordingly, this claim is conclusory.

Conclusory allegations on critical issues in a § 2255 proceeding are insufficient to raise a constitutional issue. *United States v. Woods*, 870 F.2d 285, 288 n. 3 (5th Cir.1989); *see also United States v. Jones*, 614 F.2d 80 (5th Cir. 1980) (failure of movant to state specific facts, "is insufficient to state a constitutional claim."). Because Ortiz has not sufficiently stated facts to support his claim, he has not met his heavy burden to overcome the presumption that counsel rendered reasonably effective assistance.

4. *Counsel's failure to object to the Court "loudly scold[ing]" the jury*

During deliberations, the jury sent out a note. The Court brought counsel and Ortiz into the courtroom to hear the note. The note read, "I am at a friend's house and they bust and find drugs. Am I guilty of possession because I am present at the home?" Defense counsel urged the Court to refer the jurors to the original instructions, particularly on page 13. D.E. 261, p. 120. The Court brought the jury into the courtroom and discussed the knowledge requirement and particularly pages 10 and 13 of the Jury Instructions. *Id*., pp. 121-23. Lead counsel stated, "I don't have any objection, your Honor." *Id*., p. 126.

Ortiz claims that the Court loudly scolded the jury during its response to the jury note and he instructed counsel to object. Ortiz further alleges that counsel failed to object to preserve a social relationship with the judge. Counsel's affidavit states that he does not recall the Court scolding the jury, he does not have a social relationship with the Court and Ortiz

10

never asked him to object to anything during trial. D.E. 289, ¶ 4.

The factual discrepancy between the affidavits does not need to be resolved. The record does not establish any scolding by the Court. Counsel determined that no objection was necessary and his judgment is entitled to deference. This Court is entitled to presume that counsel provided reasonably effective assistance unless and until Ortiz proves otherwise and proves prejudice. *See Strickland*, 466 U.S. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" The Fifth Circuit did not find error in the Court's instructions to the jury. *Ortiz*, 507 Fed. App'x. at 345. Ortiz has not established that counsel's failure to object fell below reasonable professional assistance or that it caused him any prejudice.

5. *Counsel's failure to protect Ortiz' right to a speedy trial*

Ortiz complains of the 19 months between his arrest and trial and claims that he told his counsel and the Court that he wanted a speedy trial.[5] The record does not support Ortiz' claim that he notified the Court of his desire for a speedy trial before September 2011.

Fourteen months after his arrest, for the first time, Ortiz wrote the Court a letter dated September 22, 2011, asking for a speedy trial. He went to trial five weeks later.

---

[5]  Counsel denies that Ortiz told him that Ortiz wanted a speedy trial and told him the opposite until after the motion to suppress was denied. *See* D.E. 289, p. 4.

The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ." There is no bright-line rule, but a court must consider four separate inquiries to determine whether the right was violated. *Barker v. Wingo*, 407 U.S. 514, 522 (1972). The considerations are, 1) the length of the delay, 2) the reason for the delay, 3) whether the defendant asserted his right to a speedy trial, and 4) whether the defendant suffered prejudice. *Id.* at 530-32; *see also Doggett v. United States*, 505 U.S. 647 (1992). Where, as here, more than one year passed, a full *Barker* analysis, is appropriate looking to the first three factors to decide whether prejudice will be presumed. *United States v. Hernandez*, 457 F.3d 416, 421 (5th Cir. 2006). "Prejudice may be presumed where the first three factors weigh 'heavily' in the defendant's favor." *Id.* Otherwise, a defendant must demonstrate actual prejudice.

The Fifth Circuit found a twenty-three month delay weighed "only slightly" in the defendant's favor. *Laws v. Stephens*, 536 Fed. App'x. 409, 412 (5th Cir. July 16, 2013) (per curiam) (designated unpublished). In *Amos v. Thornton*, 646 F.3d 199, 207 (5th Cir. 2011), a sixteen month delay did not weigh "heavily in favor" of the defendant. *Id.*

The Second Superseding Indictment in December 2010 added two more co-defendants. D.E. 68. The last co-defendant was arrested on December 16, 2010. *See* Minute Entry Initial Appearance John Edward Gomez. A superseding indictment that expands the scope of the criminal investigation to try other coconspirators resets the speedy trial clock. *United State v. Parker*, 505 F.3d 323, 327 (5th Cir. 2007). As a result of the Second Superseding Indictment , Ortiz' speedy trial clock was reset from his arrest and Indictment

12

in July 2010, to December 2010. Trial began just over a year later on November 1, 2011.

Many of the pretrial delays were created by Ortiz' requests for continuances,[6] Ortiz' pretrial motions or joint motions by Ortiz and the government. There is no evidence of bad-faith delays caused by the government. The cause of delays does not weigh in Ortiz' favor.

A defendant must "appropriately assert[ ]" his speedy-trial rights, as viewed in "light of [his] other conduct." *United States v. Loud Hawk*, 474 U.S. 302, 314 (1986). "Mere assertion of the speedy trial right is not enough for this factor to weigh in a defendant's favor. If he waits too long, his pre-assertion silence will be weighed against him. We have set no absolute limit on the amount of time that must pass before a defendant raises a claim; instead we look to the totality of the proceedings." *Parker*, 505 F.3d at 329-330). Ortiz did not assert his speedy trial right until September 22, 2011.

Although Ortiz claims he told counsel that he wanted a speedy trial, counsel denies that he did so and Ortiz does not provide any facts as to when, where, and how he asserted the right until his letter of September 2011. The Court cannot accept a conclusory statement that Ortiz asserted his rights when the record contradicts his statement. Ortiz' delay in asserting his speedy trial right weighs against him.

---

[6]   Ortiz filed five motions for continuance, including two oral motions noted in the Courts minutes, and joined in three additional motions for continuance. *See* D.E. 34, 46, 86, 131, 146; *see also* Minute Entries on February 22, 2011, April 18, 2011, and August 15, 2011.

13

The delay in this case, measured from the second superseding indictment, is just over a year. This period is insufficient to for this Court to apply a presumption of prejudice. *United States v. Serna-Villarreal*, 352 F.3d 225, 232 (5th Cir. 2003) (delay of 3 years and nine months not presumptively prejudicial). Furthermore, the other three factors do not weigh heavily in Ortiz' favor, he is therefore required to demonstrate actual prejudice. *See Parker*, 505 F.3d at 330.

Ortiz claims prejudice based upon the addition of a second possession charge and the addition of co-defendants, some of whom testified against him at trial. The Second Superseding Indictment that included the third drug trafficking count was handed down nine months before Ortiz asserted his speedy trial rights. Three of Ortiz' co-defendants, Juan Chavez, Jason Wilson, and Tracy Chaffin entered into plea agreements with the government by June 20, 2011.[7] Ortiz did not assert his speedy trial rights until three months later.

Although Chaffin testified that Ortiz supplied Wilson with methamphetamine and Chavez testified that Ortiz paid Chavez to transport drugs, Ortiz did not assert his speedy trial rights until months *after* each of them pled guilty and admitted to events that also implicated Ortiz. D.E. 214, pp. 10-11, D.E. 259, pp. 43-50, 54. Ortiz has not demonstrated prejudice from delay.

---

[7]  Wilson and Chavez were rearraigned on April 18, 2011. Chaffin was rearraigned on June 20, 2011.

14

## IV.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Ortiz has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at

15

484 (emphasis added).

Based on the above standards, the Court concludes that Ortiz is not entitled to a COA on any of his claims. Reasonable jurists could not debate the Court's resolution of his claims, nor do these issues deserve encouragement to proceed. *See Jones*, 287 F.3d at 329.

## V.  CONCLUSION

For the foregoing reasons, Ortiz' motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 272) is DENIED. He is also denied a Certificate of Appealability.

ORDERED this 13th day of September 2015.

HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE

16